FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 22, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SANDRA H.,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | NO: 2:17-CV-403-FVS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 14 and 21. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney Cory J. Brandt. The defendant is represented by Special Assistant United States Attorney Daphne Banay. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the court **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14, and **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 21.

## JURISDICTION

Plaintiff Sandra H.[1] filed for disability insurance benefits on September 22, 2014, and for supplemental security income on March 24, 2015. Tr. 278-85, 287-92. In both applications, Plaintiff alleged a disability onset date of January 24, 2014. Tr. 279, 287. Benefits were denied initially, Tr. 172-75, and upon reconsideration, Tr. 177-83. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on September 7, 2016. Tr. 88-125. Plaintiff was represented by counsel and two medical experts testified at the hearing. *Id*. A supplemental hearing was held on February 6, 2017. Tr. 37-87. Plaintiff was represented by counsel and testified at the supplemental hearing. *Id*. The ALJ denied benefits, Tr. 15-36, and the Appeals Council denied review. Tr. 1-6. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff was 51 years old at the time of her alleged onset of disability. *See* Tr. 136. She completed high school and two years of college. Tr. 331. Plaintiff has work history as a teacher aide and companion. Tr. 78-81. Since her alleged onset of disability, Plaintiff has had several jobs, each for only a few months, but was unable to continue working because she "was injured." Tr. 63-65. At the time of the hearing, Plaintiff was working part-time, 30 hours a week, as an activities assistant. Tr. 60-61. Plaintiff also testified that she had other "intermittent" sources of income at the time of the hearing, including: teaching CPR and first aid, and taking on a home health client two days a week. Tr. 73.

In January 2014 Plaintiff fractured her right upper extremity, which also impacted her already "extremely weak" left upper extremity. Tr. 55-56. At the hearing, Plaintiff testified that she has trouble with "fine motor grasping" activities, such as, ironing, lifting, shaving, folding laundry, writing with a pen for more than three or four minutes, cutting, and anything that "manipulates the hand." Tr. 56-57. She reported that she could use a computer keyboard and mouse, or lift a gallon of milk, for brief periods but not on a repetitive basis. Tr. 57-59. Plaintiff testified that she has been provided home health services through DSHS since her right arm fracture, which included help with dressing, a little bit of cleaning, errands, and a little bit of personal care. Tr. 57-58. Plaintiff also testified that she had left hip pain when she walked a lot, difficulty concentrating and staying on task, and "a little bit of short-term memory issues." Tr. 59, 68-69.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has engaged in substantial gainful activity since the alleged onset date, however, there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 20-21. At step two, the ALJ found Plaintiff has the following severe impairments: left hip disorder, right shoulder disorder, depressive disorder, and personality disorder. Tr. 21. At step three, the ALJ found that prior to the date last insured, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then found that Plaintiff had the RFC

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift no more than 20 pounds at a time occasionally and can lift or carry up to 10 pounds at a time frequently; would have no limitations on sitting, standing, and walking in an eight-hour work day with normal breaks; can occasionally crawl; never climb ladders, ropes, or scaffolds; avoid concentrated exposure to heavy industrial-type vibration; avoid all work at unprotected heights; can occasionally reach overhead with her right upper extremity and can occasionally reach in all other directions with her right upper extremity outside of eighteen inches of the body (no limitations on reaching within eighteen inches of the body). Mentally, the claimant can understand, remember, and carry out simple, routine work tasks and instructions; can have no contact with the general public; can work with or in vicinity of co-workers but not in a teamwork type setting; can

> handle normal supervision but no over-the-shoulder or confrontational type of supervision; and cannot perform fast-paced or strict production quota type work.

Tr. 24. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 28. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: electronic worker, small products assembler, and marker II. Tr. 29. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 24, 2014, through the date of the decision. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and
2. Whether the ALJ erred at step five.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence e of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, Plaintiff generally contends that the ALJ improperly rejected Plaintiff's subjective complaints. ECF No. 14 at 15-16. However, Plaintiff's sole argument, without citation to legal authority or the longitudinal record, is that the ALJ failed to specify how the normal exam findings and activities undermine Plaintiff's complaints, "specifically [Plaintiff's] complaints of fine manipulation limitations." ECF No. 14 at 16. This argument is unavailing and arguably fails to challenge the ALJ's reasons with the requisite specificity. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing).

As an initial matter, despite Plaintiff's claims to the contrary, the ALJ did "identif[y] Plaintiff's alleged limitations in detail, which included those of fine manipulative limitations," including: her reports of weakness in her bilateral shoulders, which limits what she is able to do with her hands; her testimony that her right and left shoulder impairments make it difficult to do activities such as folding laundry, writing, ironing; her testimony that she had a home healthcare worker who helped her with activities of daily living, and that she continues to struggle with these tasks; and her testimony that she is able to use a keyboard and lift a gallon of milk, but cannot do either on a repetitive basis. ECF No. 21 at 4 (citing Tr. 25, 56-59, 362). Next, the ALJ found, "after careful consideration of the evidence" that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 25.

### 1. Lack of Objective Medical Evidence

First, "after reviewing the longitudinal medical evidence of record," the ALJ found that Plaintiff is not as limited as she has alleged." Tr. 25. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here the ALJ set out, in detail, medical evidence contradicting Plaintiff's claims of disabling physical limitations.[2] Tr. 25-26. For example, the ALJ noted

---

[2] The ALJ additionally found that "although [Plaintiff] clearly suffers from underlying mental health issues, there is minimal evidence of treatment for these conditions in the record." Tr. 26. The ALJ further noted that Plaintiff was "described throughout the record as presenting with normal mood and affect, as well-oriented, with intact memory, and with good insight." Tr. 26 (citing Tr. 558, 641, 644, 650, 660, 662, 675, 682, 699, 712, 724, 861, 873, 879, 887, 891, 898,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

that despite reporting ongoing difficulties with her right shoulder subsequent to an injury in January 2014, physical findings suggested improvement after the initial injury, including: March 2014 imaging results that showed healing; May 2014 improvement in elbow mobility, reaching, and range of motion; June 2014 imaging that showed fracture was healed; July 2014 notes of improvement in range of motion, and increased strength and functioning, of her right shoulder; September 2014 reports that her shoulder was much improved and release of Plaintiff from follow-up care; and January 2015 notation of slight decrease in strength of right shoulder, but equal bilateral strength in forearms and wrists. Tr. 25 (citing Tr. 411-17, 422, 433-34, 511, 556, 559, 701); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). The ALJ also specifically noted that there is minimal evidence of treatment for her shoulder complaints after December 2014. Tr. 25; *see Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor). In July 2015, treatment notes indicate Plaintiff had decreased range of motion and tenderness in her right shoulder, but grip strength, strength, sensation and reflexes were intact; and in

---

944). However, neither party identified or challenged this finding in their briefing; thus, the Court declines to address the issue. *Carmickle*, 533 F.3d at 1161 n.2.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

early 2016 Plaintiff had good range of motion in both her left and right upper extremities. Tr. 25-26 (citing Tr. 736, 781). Finally, the ALJ noted minimal evidence of treatment for Plaintiff's left hip, and an evaluation in July 2015 revealed full strength in the lower extremities, normal range of motion in the hips, normal gait, and ability to ambulate without difficulties. Tr. 26, 736-37.

Based on the foregoing evidence, the ALJ reasonably concluded that the longitudinal medical evidence of record does not support the severity of Plaintiff's claimed physical limitations. Tr. 25. This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2. *Daily Activities*

Second, the ALJ noted that Plaintiff's activities suggest she is not as limited as she has alleged. Tr. 25-26. Evidence about daily activities may properly be considered by the ALJ when evaluating Plaintiff's symptom claims. *Fair*, 885 F.2d at 603. However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds

for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, as noted by the ALJ, Plaintiff testified that she has difficulty with activities like folding laundry, writing, and ironing as a result of limitations in both of her upper extremities. Tr. 25, 56. She further reported that she could use a keyboard and lift a gallon of milk, but could not do either of these activities on a repetitive basis; and had difficulty with concentration, distractibility, and memory. Tr. 25, 57-59, 68-69. Plaintiff also testified that she had a home healthcare worker who helped her with activities of daily living, and that she continues to struggle with these tasks. Tr. 25, 58. However, as noted by the ALJ, Plaintiff reported in August 2014 that she only experienced increased pain in her shoulder after playing guitar for two hours; in November 2014 she noted that was seeking employment and taking a dance class; and in March 2016 she indicated she was going to the gym on a regular basis and handling her job as a caregiver "well." Tr. 25 (citing Tr. 667, 683, 689, 921). In addition, Plaintiff testified at the hearing that she was working 30 hours as an activities assistant, and was leading a church service. Tr. 26, 60-61, 74-75. Finally, as noted by the ALJ, Plaintiff reported in July 2015 that she was independent in self-care, did household chores, played guitar and wrote music, went shopping, and drove a car. Tr. 26, 735.

Based on this evidence, and regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude that the activities

performed by Plaintiff during the adjudicatory period suggest she is not as limited as she has alleged. Tr. 26; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). This was a clear, convincing, and largely unchallenged reason for the ALJ to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Step Five**

Plaintiff argues the ALJ erred at step five. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical–Vocational Guidelines (the "Grids"). *Tackett,* 180 F.3d at 1100–1101; *Osenbrock v. Apfel,* 240 F.3d 1157, 1162 (9th Cir. 2000).

First, Plaintiff contends that the ALJ failed to account for Plaintiff's subjective complaints regarding her "fine manipulation limitations"; and therefore

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

erred at step five by posing an incomplete hypothetical to the vocational expert ("VE"). ECF No. 14 at 17. Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir.2009) (citation and quotation marks omitted). However, as discussed in detail above, the ALJ's rejection of Plaintiff's symptom claims was supported by the record and free of legal error. The hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record.

Second, Plaintiff argues the ALJ "failed to meet his 'affirmative responsibility' to ensure that the VE's testimony was consistent with the DOT." ECF No. 14 at 18. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir.1995). The ALJ, furthermore, has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT, and "elicit a reasonable explanation for any discrepancy" with the DOT. *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir.1999); Social Security Ruling (SSR) 00–4p, *available at* 2000 WL 1898704 *1. The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00–4p at *4.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

Here, in accordance with the assessed RFC, the hypothetical presented to the VE by the ALJ stated, in part, that Plaintiff "cannot perform fast-paced or strict production quota style type work." Tr. 24, 82. Based on the hypothetical, the VE testified that Plaintiff could perform work that exists in the national economy, including: electronics worker (DOT 726.687-010, *available at* 1991 WL 679633); small products assembler (DOT 739.687-030, *available at* 1991 WL 680180); and marker II (DOT 920.687-126, *available at* 1991 WL 687992).[3] Tr. 83-84. Plaintiff "generally alleges that all three jobs the [VE] identified, and which the ALJ relied on at step five, are production jobs and that "[a]ccording to the DOT, all three of these jobs are classified as manufacturing jobs under the Standard Industrial Classifications Index" and therefore Plaintiff alleges that the [VE's] testimony was not consistent with the DOT and that the ALJ erred by not resolving this conflict." ECF No. 21 at 10-11 (citing ECF No. 14 at 18-19). However, Plaintiff misstates the restriction in the hypothetical as prohibiting all "production type jobs," whereas a close reading of the ALJ's hypothetical indicates that Plaintiff was only restricted to "no fast-paced or strict production quota-type

---

[3] Here, as noted by Defendant, the ALJ fulfilled his affirmative responsibility to confirm with the VE that his testimony would be consistent with the DOT and the SCO (Selected Characteristics of Occupations), and that the VE would alert to ALJ to "any variances at all from those publications." Tr. 77.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

work." Tr. 24, 82.  Thus, the hypothetical did not preclude Plaintiff from performing all production work; rather, Plaintiff was only precluded from fast-paced or strict production quota-type work.

Defendant acknowledges that one of the jobs identified by the VE, small products assembler (DOT 739.687-030, *available at* 1991 WL 680180), requires "attaining precise set limits, tolerances, and standards" according to the DOT description.  ECF No. 21 at 12.  However, the DOT descriptions of the additional two jobs identified by the VE, electronics worker (DOT 726.687-010, *available at* 1991 WL 679633) and marker II (DOT 920.687-126, *available at* 1991 WL 687992), do not include any indication that they require fast paced or strict production quota-type work, nor does Plaintiff cite to any such restrictions.  In her reply brief, Plaintiff generally cites the DOT descriptions for electronics worker and marker II, but primarily relies on the categorization of these jobs according to "O*NET, the Department of Labor's replacement for the DOT," as support for her argument that these jobs are "production/quota jobs" and therefore "do not fit within the ALJ's hypothetical." ECF No. 22 at 6-8.  However, the salient issue is whether the DOT job description conflicts with the VE testimony, not whether the classification under O*NET conflicts with the VE testimony.  Because Plaintiff fails to demonstrate any conflict between the DOT description of electronics worker and marker II, and the VE testimony, the ALJ did not err in relying on the VE's testimony that Plaintiff could perform these jobs at step five.

Based on the foregoing, the Court finds no error in the ALJ's determination at step five that the VE's testimony was consistent with the information contained in the DOT, and based on that VE testimony, that there are jobs in significant numbers in the national economy that Plaintiff can perform. *See* Tr. 29-30.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, and the ALJ did not err at step five. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgement shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** January 22, 2019.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge